896 F.2d 1369
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rajendra K. NARANG, Plaintiff-Appellant,
v.
CHRYSLER CORPORATION, Defendant-Appellee.
 Nos. 88-3918, 88-3954.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1990.
 
 Before KENNEDY and BOGGS, Circuit Judges, and THOMAS G. HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Rajendra K. Narang appeals the district court's directed verdict for defendant in his suit against Chrysler for discrimination on the basis of race, in violation of 42 U.S.C. Sec. 1981. We affirm the district court's decision.
 
 
 2
 Narang was hired by Chrysler Corporation on November 15, 1976 as a tool and die hardener at the Twinsburg (Ohio) Stamping Plant. Narang is an Asian-Indian who arrived in the United States in March 1976. In February 1983, Chrysler eliminated the tool and die hardener classification at the Twinsburg plant. Chrysler placed Narang on indefinite layoff status. The layoff was made pursuant to a collective bargaining agreement between Chrysler and the United Auto Workers. Chrysler claims that it tried but failed to find a position in which it could place Narang within the contractual restrictions of the agreement. The agreement did not permit Narang to bump another employee in the plant in order to avoid layoff when his job classification was eliminated. After six months, Narang was recalled from the layoff to the position of mechanical handling repairman. He was placed in the automation department as the result of a special agreement between the International UAW and Chrysler's personnel department. Narang received the same full journeyman rate of pay he had received as a tool and die hardener. Chrysler claims that Narang was unable to perform the duties of a mechanical handling repairman. After several complaints about, and evaluations of, Narang's job performance, and after the plant's personnel manager, Mr. Donald Booth, contacted Chrysler's corporate personnel department for advice about how to deal with Narang's special placement, Booth disqualified Narang from the position of mechanical handling repairman on April 24, 1984. Narang was placed in the production department as an arc welder.
 
 
 3
 Narang sued Chrysler on December 22, 1986, alleging racial discrimination in his layoff from the position of tool and die hardener and his disqualification from the mechanical handling repairman classification. Discovery lasted seven months. At the start of the first day of trial on August 25, 1988, Narang's counsel requested permission from the court to withdraw from the case. He felt his client should have accepted Chrysler's settlement offer of $10,000, and that the differences of opinion between him and his client over strategy and likely outcome were such that he could not adequately represent his client. Narang requested a continuance.
 
 
 4
 The court refused the request for a continuance and told Narang he had three alternatives: (1) proceed to trial with present counsel, (2) proceed to trial pro se, or (3) accept the settlement offer. The court indicated it was of the opinion that Narang's counsel could competently represent him if the case should go forward. Narang's counsel once again requested to withdraw. Narang expressed his desire to proceed with present counsel, which is what occurred. After presentation of Narang's case in chief, Chrysler's motion for directed verdict was granted by the district court, on the ground that Narang had failed to present evidence of discrimination. On appeal, Narang alleges error by the trial court on four points.
 
 I. Denial of continuance
 
 5
 Appellant argues that it was error not to grant him a continuance at the start of trial because of his counsel's request to withdraw from the case. His argument is apparently that he was deprived of his right to a fair trial. We are aware that it has been held error to refuse a continuance where a party's counsel withdraws shortly before trial and replacement counsel does not have time to acquaint himself with the case. Such was not the case here. Narang's original counsel did represent him at trial and there was no need to acquaint new counsel with the case.
 
 
 6
 We hold that the trial judge did not err in refusing to grant appellant a continuance. Whether to grant a continuance is committed to the sound discretion of the trial judge. Pingatore v. Montgomery Ward & Co., 419 F.2d 1138 (6th Cir.1969), cert. denied, 398 U.S. 928 (1970). Appellant offers no evidence to show that the representation actually provided by his counsel at trial was inadequate. The record shows no evidence of counsel's lack of preparation at trial. Nor is there any discernable prejudice that resulted from the representation that appellant received.
 
 
 7
 This case is distinguishable from Anderson v. Sheppard, 856 F.2d 741 (6th Cir.1988), where this court found that the trial judge had erred in denying a further continuance (beyond a period of at least 40 days) to a plaintiff whose counsel had withdrawn two days prior to an original trial date because of the plaintiff's refusal to accept a settlement offer. In Anderson, the court permitted the withdrawal of counsel. Plaintiff was left with the difficulty of obtaining new counsel and familiarizing new counsel with his case in the time remaining before trial. By contrast, the district court in this case refused to permit the withdrawal of counsel and Narang was represented at trial by counsel who was familiar with the case.
 
 II. Refusal to qualify expert witness
 
 8
 At trial, appellant called Paul Jeunette for the purpose of testifying to his belief that Narang was disqualified for discriminatory reasons. Appellant sought to have Jeunette certified as an expert witness. Although it is not clear from the record, Jeunette's purported field of expertise was apparently his knowledge of discrimination in the workplace. Jeunette was the local financial secretary for the United Auto Workers and a full-time tool and die worker for Chrysler. As part of his UAW duties, he investigated grievances filed by employees against Chrysler. He had investigated appellant's disqualification. The court refused to qualify the witness as an expert and accordingly did not allow Jeunette to offer an opinion as to the reason for appellant's disqualification.
 
 
 9
 We hold that the trial court did not err in refusing to qualify Jeunette as an expert witness. Whether to admit or exclude opinion testimony is committed to the sound discretion of the trial court. Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir.1985). Similarly, the decision whether a witness is properly qualified as an expert is within the sound discretion of the trial court and will be overruled only on the ground of an abuse of that discretion. Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981). The trial court in this case found that Jeunette did not have specialized knowledge or skill that would qualify him to render a conclusion that appellant was disqualified for discriminatory reasons. On appeal, appellant does not identify any such specialized knowledge or skills.
 
 
 10
 Similarly, the trial court was not required by Fed.R.Evid. 701, "Opinion Testimony by Lay Witness," to admit Jeunette's opinion testimony. The Rule permits opinion testimony by a non-expert where the opinion is (1) "rationally based on the perception of the witness" and (2) "helpful to a clear understanding of his testimony or the determination of a fact in issue." In this case, there was no clear reason that Jeunette's opinion would be of any greater value than the jury's own judgment. We hold that the trial court acted within its discretion in refusing to permit Jeunette's opinion testimony.
 
 III. Exclusion of witness's drug use
 
 11
 At trial, appellant called as a witness one of the supervisors in the automation department at Chrysler.[1] The witness had evaluated Narang's performance in that department. Appellant asked the witness if he had a drug problem. The defense objected and the court sustained the objection. Appellant explained that the witness's drug problem was relevant to his credibility. At a voir dire of the witness, he testified that he began using a non-narcotic drug one month after Narang's disqualification; that he started abusing that drug one month later; that he entered a rehabilitation program shortly thereafter; and that he has not used drugs since leaving the program and returning to work.
 
 
 12
 Appellant argues that the witness's testimony concerning his drug problem should have been heard by the jury. He cites Fed.R.Evid. 607, allowing a party to attack the credibility of a witness he has called, and Rule 608(b), which allows the court to permit evidence of specific instances of conduct of a witness where the conduct is probative of truthfulness or untruthfulness.
 
 
 13
 We hold that the district court did not err in keeping the evidence of the witness's drug use from the jury. First, the witness testified that he did not start using drugs until after appellant's disqualification, and appellant did not offer any evidence to the contrary. Second, Rule 608(b) commits the decision on admissibility to the discretion of the judge, and that decision must take into account Rule 403's balance of probative value against prejudicial effect and Rule 611's prohibition against harassment or undue embarassment of a witness. Third, the instant case is distinguishable from cases involving contemporaneous drug use, where drug use may be relevant to credibility. United States v. Banks, 520 F.2d 627, 630-31 (7th Cir.1975) (jury should not be deprived of evidence of possible inability to recollect and relate). Here, the witness testified that he used drugs only after Narang's disqualification, and that he had since terminated his use of drugs. A more apposite case is Crimm v. Missouri Pacific R. Co., 750 F.2d 703 (8th Cir.1984), where evidence of illegal drug use two or three years prior to the incident in question was held not admissible to impeach a witness on the issue of his truthfulness. Finally, we note that even if the exclusion of the witness's testimony was in error, it was harmless; even if the witness had been discredited, appellant would still have failed, in the district court's view, to present sufficient evidence to withstand a motion for directed verdict. Appellant apparently concedes the point, noting that this issue cannot be the basis of reversal, but would be important only in the event of a new trial.
 
 IV. Evidence of discrimination
 
 14
 Appellant contends that the district court erred in awarding a directed verdict to Chrysler because under the rule established in Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775 (1989), Chrysler did not meet its burden of proof. In Price Waterhouse, the Supreme Court held that in a "mixed motive" discrimination case, where a plaintiff proves that a prohibited factor played a substantial part in the employment decision, the employer may avoid a finding of liability against it only by proving by a preponderance of the evidence that it would have made the same decision absent the unlawful consideration.
 
 
 15
 The standard established in Price Waterhouse is inapplicable to this case. Appellant failed to prove that a prohibited factor played a substantial part in Chrysler's decisions to lay him off and to disqualify him. Unless the plaintiff makes such a showing, there is no reason to reach the question of the proper standard for the defendant under Price Waterhouse.[2] The district court specifically found that appellant failed to present any evidence, direct or circumstantial, to show that Chrysler acted out of intentional discrimination. On appeal, appellant fails to point to any evidence of discrimination in the record that the district court missed. Indeed, the only evidence presented that relates a certain behavior by Chrysler to appellant's race is evidence presented by Chrysler that it treated appellant more favorably than similarly situated white employees. A white employee, the only other tool and die hardened at the plant, was laid off two years prior to Narang's layoff, and the two white employees who displayed an inability to perform the duties of a mechanical handling repairman were disqualified within three months (compared with Narang's seven months) of their placement. Appellant's theory of discrimination appears to rest entirely on the fact that he was different from other employees and he was laid off and later disqualified from a particular position. Such allegations, standing alone, simply present insufficient evidence to make out a case of discriminatory conduct under 42 U.S.C. Sec. 1981.[3]
 
 
 16
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 This court follows the district court in maintaining the confidentiality of the witness's identity
 
 
 [2]
 Appellant's reliance on Price Waterhouse is misplaced for two other reasons. First, the rule of Price Waterhouse applies only to "mixed motive" cases, where the employer had legitimate as well as discriminatory reasons for its decision. Second, Price Waterhouse involved a suit brought under Title VII, while appellant in the instant case brought suit under 42 U.S.C. Sec. 1981, which requires a showing that the defendant intentionally discriminated
 
 
 [3]
 We note, without deciding, that there is some question after the Supreme Court's decision in Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363 (1989), as to whether appellant's claims are actionable at all under 42 U.S.C. Sec. 1981. In Patterson, the Court held that Sec. 1981 does not cover claims by employees of discriminatory treatment by an employer after the initial employment relationship is established. Following the language of the statute, the Court held that Sec. 1981 protected the right to "enter into" contracts and did not cover actions taken by employers during the course of employment (with certain exceptions). In this case, appellant does not allege discrimination in his initial employment by Chrysler in November 1975. Several recent Court of Appeals decisions support such a reading of Patterson. Risinger v. Ohio Bureau of Workers' Compensation, 883 F.2d 475 (6th Cir.1989) (racial harassment); W.T. Becton v. Burlington Northern Railroad Co., No. 86-6136 (6th Cir. July 10, 1989) (racial harassment, job demotion); Overby v. Chevron USA, Inc., 884 F.2d 470, 472-73 (9th Cir.1989) (racially discriminatory discharge); Brooms v. Regal Tube Co., 881 F.2d 412, 424 (7th Cir.1989) (racial harassment)